UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Qwinstar Corporation,　　　　　　　　　　　　　　Civ. No. 15-2343 (PAM/BRT)

　　　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM AND ORDER**

Curtis Anthony and Pro
Logistics, LLC,

　　　　　　　　　Defendants.

---

　　　　This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, Motion for Rule 11 Sanctions, and Renewed Motion for Discovery Sanctions. For the following reasons, the Motion for Partial Summary Judgment is granted and the Motions for sanctions are denied.

**BACKGROUND**

　　　　Plaintiff Qwinstar Corporation ("Qwinstar") is a Minnesota corporation in the business of repairing and maintaining IBM 3890 check-processing machines. When the facts surrounding this dispute began, Defendant Pro Logistics, LLC ("Pro Logistics") was in the same business. At that time, Defendant Curtis Anthony claimed to be Pro Logistics' sole owner and employee. In 2012, the parties began negotiations for Qwinstar to acquire Pro Logistics.

　　　　In 2013, the parties entered into two separate but related contracts. First, Qwinstar and Anthony signed an Asset Purchase Agreement ("APA") in which Qwinstar agreed to purchase all of Pro Logistics' inventory and assets for $50,000.

Together with the APA, the parties also executed an Employment Agreement ("EA"), whereby Qwinstar agreed to hire Anthony for five years at a salary of $200,000 per year. The two contracts are allegedly related because "the employment agreement was really the vehicle to pay for [Pro Logistics'] parts." (Grunberg Dep. (Docket No. 61-1) at 90.) The parties executed both agreements and Qwinstar began performance, paying for Pro Logistics' inventory and employing Anthony. In 2014, Qwinstar became concerned that Anthony was misrepresenting the contents of Pro Logistics' inventory and that he was selling some of that inventory to third parties. When Anthony failed to explain the matter, Qwinstar fired him in January 2015 pursuant to a section in his employment agreement allowing for termination for "misappropriation or other material act of dishonesty against the company." (Defs.' Opp'n Mem. (Docket No. 276) at 8.)

The procedural history of this case is long and contentious. In May 2015, Qwinstar sued Defendants for fraud, conversion, and breach of contract, claiming that Anthony's actions constituted a breach of the APA. Defendants counterclaimed that Qwinstar breached the EA by wrongfully firing Anthony and failing to continue paying his base salary for the entire five-year term. Defendants' other counterclaims allege that Qwinstar was unjustly enriched by retaining Anthony's inventory and customers, and that Qwinstar committed fraud by executing the EA with no intent to perform.

On Defendants' first Motion for Summary Judgment (Docket No. 42), Judge Richard H. Kyle granted summary judgment in favor of Defendants, dismissing Plaintiff's Amended Complaint and awarding Defendants the remaining balance due under the EA, $800,000. (Docket No. 109.) The Eighth Circuit thereafter affirmed summary judgment

as to the dismissal of Qwinstar's claims but held that "[s]ummary judgment was inappropriate on Anthony's counterclaim because the contract provisions are ambiguous and reasonably susceptible to more than one interpretation. As such, interpretation becomes a question of fact precluding summary judgment." Qwinstar Corp. v. Anthony, 882 F.3d 748, 757 (2018).

Qwinstar later filed a Motion to Amend its answer on September 14, 2018, after learning that a court had convicted Anthony of child sex trafficking in June 2017 and that he was not the sole owner of Pro Logistics as he had previously represented. (Docket No. 164.) Defendants filed a Second Motion for Summary Judgment on the same day. (Docket No. 168.) This Court granted Qwinstar's Motion to Amend and re-opened discovery to allow the parties time to determine the scope and materiality of that new information, and denied Defendants' Motion for Summary Judgment because there were still questions of fact regarding the provisions of the EA. (Docket No. 201.)

Thereafter, an extensive discovery dispute ensued in which the parties could not agree on a date, time, or manner by which to take Anthony's deposition. Defendants' counsel repeatedly failed to cooperate in scheduling and attending the deposition, which prompted Qwinstar to file a Motion to Compel and for Sanctions. (Docket No. 210.) Magistrate Judge Becky R. Thorson granted Qwinstar's Motion to Compel Anthony's deposition, but denied the Motion for Sanctions without prejudice. (See Docket No. 221.) After a plethora of motions and objections, directed at both this Court and Magistrate Judge Thorson, Judge Thorson ordered Defendants' counsel to pay the costs and fees associated with a second rescheduling of the deposition, and this Court affirmed that order over

3

Defendants' objections. (See Docket Nos. 247, 255.) The parties thereafter took Anthony's deposition on March 28 and 29, 2019.

On April 1, 2019, Qwinstar filed the instant Motion for Partial Summary Judgment and Motion for Rule 11 Sanctions. A Renewed Motion for Discovery Sanctions followed on May 23, 2019.

**DISCUSSION**

**A.  Motion for Partial Summary Judgment**

Qwinstar contends that partial summary judgment is proper because there is no factual support for Defendants' fraud claim and no legal support for Defendants' unjust enrichment claim. The Court agrees, and the Motion is granted.

**1.  Summary Judgment Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## 2. Fraud

Defendants allege that Qwinstar made certain misrepresentations about Anthony's future employment that "fraudulently induced Defendants to enter into the Employment Agreement and APA." (Ans. (Docket No. 12) at 19.) The parties agree that a fraud claim based on misrepresentations about a future event requires that Defendants provide "affirmative evidence indicat[ing] that [Qwinstar] did not intend to perform at the time it entered into the APA and Employment Agreement." (Pl.'s Supp. Mem. (Docket No. 260) at 1-2 (quotation omitted); see Defs.' Opp'n Mem. at 23.)

Defendants cite to little evidence demonstrating that Qwinstar did not intend to employ Anthony for the five-year term at the time of contract formation. Defendants cite to an email exchange in which one Qwinstar employee states: "I do not trust [Anthony] at all—I think we need to have all information prior to starting any deal with him. I have a feeling he will not be happy when he finds out he will not be an employee and all of this might be for nothing." (Defs.' Opp'n Mem. at 13.) A second employee responds: "he knows he's not going to be an employee." (Id.) This email exchange is from May 24, 2013. Discussions between the parties continued after this exchange, and the parties did not execute the APA and EA until September 25, 2013, four months after the email discussion. When asked about this exchange during a deposition, Qwinstar's managing director stated, "in the initial discussions with him in 2012 and early 2013, we questioned whether he even wanted to be an employee. And it was much later in 2013 before he pushed the issue . . . about becoming an employee." (Shannon Decl., Ex. 1 (Docket No. 61-1) at 32.) Defendants also point out that Qwinstar entered into agreements with

5

BancTec and IBM Canada for similar parts and inventory, and allege that Qwinstar only entered into the contracts with Defendants "to use Pro Logistics' inventory with its low up-front cost until it could negotiate the larger transactions with BancTec and IBM Canada." (Defs.' Opp'n Mem. at 24.)

The Court finds that Defendants' evidence is insufficient to withstand summary judgment. The email exchange between Qwinstar employees occurred during the contract-negotiation process four months before the parties formed their contractual relationship and before the parties had agreed that employment was going to be a part of that contractual relationship. Even drawing all inferences in favor of Defendants, this evidence merely shows that at a point months before contract formation, Qwinstar did not intend to hire Anthony as part of the parties' arrangement. This does not demonstrate that Qwinstar had no intention to perform at the time it entered into the agreements in September 2013. Additionally, that Qwinstar employed and paid Anthony for more than a year before firing him further belies Defendants' contentions.

Finally, Defendants' circumstantial evidence regarding Qwinstar's deals with BancTec and IBM Canada are similarly insufficient to create a genuine issue of material fact. Using Defendants' own timeline, Qwinstar did not begin negotiating those deals until after it had already negotiated with Defendants, and did not finalize those deals until 2014, after Qwinstar had already executed the APA and EA. (Defs.' Opp'n Mem. at 14; Pl's Reply Mem. (Docket No. 280) at 3.) Defendants' evidence amounts to mere allegations insufficient to withstand summary judgment, and more properly goes to the issue of whether Qwinstar fired Anthony for cause, not whether Qwinstar perpetrated a fraud at the

6

time of contract formation. Accordingly, summary judgment on the fraud claim is appropriate.

### 3. Unjust Enrichment

Qwinstar argues that Defendants cannot recover under unjust enrichment because the parties' contract covers the alleged harm. Under Minnesota law, "equitable relief is unavailable . . . where, as here, the rights of the parties are governed by a valid contract." Watkins Inc. v. Chilkoot Distributing, Inc., 719 F.3d 987, 994 (8th Cir. 2013).

Defendants point out that "[w]hile it is true a party cannot recover for breach of a contract and for unjust enrichment for the same conduct, it 'may plead alternative claims in its complaint, even if those claims are inconsistent with one another.'" (Defs.' Opp'n Mem. at 22 (citing Cummins Law Office, P.A. v. Norman Graphic Printing Co., 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (Kyle, J.)).) However, the holding in Cummins and similar cases applies when parties plead alternative theories of relief at the motion-to-dismiss stage. But alternative theories of relief, such as unjust enrichment, fail on summary judgment if a valid contract governs the parties' relationship, as is the case here. See Cherne Contracting Corp. v. Marathon Petroleum Co., LLC, 578 F.3d 735, 745 (8th Cir. 2009) (affirming district court's grant of summary judgment on an unjust enrichment claim where a valid contract covered the parties' relationship). Defendants' counterclaim seeks to recover under unjust enrichment based on the same harm caused by the alleged breach of contract, such as the loss of machinery, parts, and customers. (Ans. at 20-21.)

Perhaps aware of this, Defendants have alleged a new basis for their unjust enrichment claim: ongoing storage costs that are not explicitly addressed in the parties'

7

contract. Although the APA speaks to inventory storage obligations, it does not address the disposition of inventory after the EA ends. Thus, Defendants contend that an unjust-enrichment claim may lie for any storage costs due after the EA's termination.

However, Defendants counterclaim and initial disclosures do not seek damages for ongoing storage costs as part of their unjust enrichment claim. (See Ans. at 20-21; see also Anderson Aff. (Docket No. 281) Ex. A.) And "a memorandum is not the appropriate place to attempt to amend a pleading to raise a new claim." Nelson v. Bank of New York Mellon, No. 12cv1096, 2012 WL 4511165, at *4 n.2 (D. Minn. Oct. 1, 2012) (Nelson, J.).

Even if it were proper to bring a new claim at this stage, Defendants are still not entitled to equitable relief because there are legal remedies to address the storage issue. "So long as an adequate legal remedy exists, equitable remedies like unjust enrichment are not available." Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 854 (8th Cir. 2014). First, Qwinstar correctly points out that a "warehouseman's lien" provides Defendants an adequate legal avenue for effectuating removal of, or payment for, any of Qwinstar's property that remains in Defendants' storage facility in Oklahoma. See Okla. Stat. § 12A-7-209, 210. But perhaps more fundamentally, Defendants may still recover for any ongoing storage costs under their existing breach-of-contract claims. In fact, Defendants claim that storage costs were "a direct and proximate result of Qwinstar's breach of contract" in their initial disclosures. (Anderson Aff. Ex. A at 5.) Should Defendants prevail on their breach-of-contract claim, any storage costs incurred as a result of the breach may be recoverable as consequential or special damages.

The parties' contract governs their relationship, and Defendants possess adequate legal remedies to address the ongoing storage issues. Accordingly, there is no legal basis for Defendants' unjust enrichment claim and summary judgment is proper.

**B.     Motion for Rule 11 Sanctions**

Qwinstar seeks the same relief, and in fact relies on the same arguments, in both its Motion for Rule 11 Sanctions and its Motion for Partial Summary Judgment. Qwinstar contends that dismissal of Defendants' fraud and unjust enrichment claims under Rule 11 is appropriate because Defendants are "bringing and continuing to maintain" these claims without factual or legal support. (Pl's Supp. Mem. (Docket No. 262) at 1.) Qwinstar also seeks attorney's fees and costs incurred in connection with these claims.

Because the Court has already granted Qwinstar the relief it seeks in its Motion for Partial Summary Judgment, there is no need for an independent analysis under Rule 11. Additionally, the Court finds that Defendants' claims were not so frivolous or unsupported to warrant additional sanctions in the form of attorney's fees and costs. See Fed. R. Civ. P. 11(b). Qwinstar's request to dismiss Defendants' fraud and unjust enrichment claims for violating Rule 11 is denied.

**C.     Renewed Motion for Discovery Sanctions**

Due to Defendants' lack of cooperation in scheduling Anthony's deposition, Qwinstar requests an order "awarding Qwinstar its reasonable attorneys' fees and costs incurred in connection with its efforts to depose Anthony," and holding Defendants and their counsel jointly and severally liable for that amount. (Pl's Supp. Mem. (Docket No. 269) at 16.)

9

Qwinstar argues that such sanctions are appropriate under Fed. R. Civ. P. 37(d) and 37(b)(2)(C). Specifically, Qwinstar claims that defense counsel violated Rule 37(d)(1)(A)(i), which states: "The court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer . . . fails, after being served with proper notice, to appear for that person's deposition." Qwinstar then contends that sanctions are mandatory under Rule 37(d)(3), which states in relevant part that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

First, Rule 37(d)(1)(A)(i) does not apply. The Eighth Circuit has held that Rule 37(d) is to be strictly construed and only applies to a failure to appear at a deposition. <u>Aziz v. Wright</u>, 34 F.3d 587, 589 (8th Cir. 1994). This is not a case where counsel failed to attend a scheduled deposition. Instead, the parties were unable to agree on a date or a method for taking the deposition, which led Qwinstar's counsel to cancel two prospective depositions before their scheduled date.

Second, further sanctions under Rule 37(b)(2)(C) are not warranted. Rule 37(b)(2)(C) applies when a party or party's officer fails to obey a court order to provide or permit discovery, stating, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

But the Court has already sanctioned Defendants for their shortcomings during the new period of discovery. Defense counsel failed to honor scheduled deposition dates and insisted on taking the deposition by telephone even after the Court repeatedly ordered them to take the deposition in person. Defense counsel also failed to provide sufficient evidence demonstrating that they were unable to attend the deposition in person, despite the Court's requests. Accordingly, Judge Thorson sanctioned Defendants, ordering defense counsel to pay the costs and fees associated with rescheduling the second cancelled deposition. (Docket No. 247 at 3.) Qwinstar now seeks relief that this Court has already awarded, and therefore additional sanctions are not necessary. Moreover, certain facts and circumstances, reviewed in-camera, render additional sanctions unjust.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion for Partial Summary Judgment (Docket No. 258) is **GRANTED**;

2. Plaintiff's Motion for Rule 11 Sanctions (Docket No. 261) is **DENIED**; and

3. Plaintiff's Renewed Motion for Discovery Sanctions (Docket No. 267) is **DENIED**.

Dated: <u>August 14, 2019</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge